## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Philecia Whiting,

                          Plaintiff,          Case No. 25-10959

v.                                            Judith E. Levy
                                              United States District Judge

Care Credit, *et al.*,

                                              Mag. Judge Anthony P. Patti
                          Defendants.

_____/

## OPINION AND ORDER PARTIALLY DISMISSING
## THE CASE WITHOUT PREJUDICE

*Pro se* Plaintiff Philecia Whiting brings this action against
Defendants Care Credit and Synchrony Bank, alleging violations of the
Fair Credit Reporting Act (FCRA) (Count I), the Equal Opportunity
Credit Act (EOCA) (Count II), the Consumer Financial Protection Act
(CFPA) (Count III), the Truth in Lending Act (TILA) (Count IV), and
"identity theft laws, 18 U.S.C. § 1028" (Count V). (ECF No. 1, PageID.2.)
For the reasons set forth below, Counts I, III, IV, and V are dismissed
without prejudice under 28 U.S.C. § 1915(e)(2)(B); Count II survives
dismissal.

## I. Background

Plaintiff alleges that she is "a consumer," that Care Credit is "a financial services company offering credit-related services," and that Synchrony Bank is "a financial institution." (ECF No. 1, PageID.1, ¶¶ 1–3.) Plaintiff alleges that she opened a Care Credit account in November 2022 and paid off its balance in February 2023. (*Id.* at ¶¶ 6–7.) On March 1, 2023, she received an email from Defendants "referencing a new account number" and "stating that a lost/stolen card replacement was being issued." (*Id.* at ¶ 8.) Plaintiff indicates that she "never reported the card as lost or stolen." (*Id.* at ¶ 9.) She denies authorizing the opening of a new account. (*Id.*)

Plaintiff contacted Defendants immediately "to dispute the unauthorized account." (*Id.* at PageID.2, ¶ 10.) According to Plaintiff, "Defendants falsely stated that the previous account . . . had an outstanding balance and unilaterally created a new account . . . transferring the prior balance." (*Id.* at ¶ 11.) Plaintiff asked Defendants for documentation regarding the new account, "including the application or authorization used to create" it, but Defendants "refused" to fulfill her request. (*Id.* at ¶ 12.)

Plaintiff states that she filed an identity theft and fraud claim with the Consumer Financial Protection Bureau (CFPB). (*Id.* at ¶ 13.) She alleges that "[i]n response, Defendants erased all records of both accounts from Plaintiff's online Care Credit portal and removed all related credit reporting." (*Id.* at ¶ 14.)

As noted above, Plaintiff brings five counts: violations of the FCRA (Count I), the ECOA (Count II), the CFPA (Count III), TILA (Count IV), and "identity theft laws, 18 U.S.C. § 1028" (Count V). (ECF No. 1, PageID.2.) Plaintiff seeks declaratory, injunctive, and monetary relief. (*Id.* at PageID.3.) The Court granted Plaintiff's request to proceed without prepayment of the filing fee pursuant to 28 U.S.C. § 1915(a)(1). (ECF Nos. 2, 6.)

## II. Legal Standard

Because Plaintiff has been given permission to proceed without prepayment of the filing fee, the Court must screen the complaint under § 1915(e)(2)(B) to determine if the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see McGore v. Wrigglesworth*, 114 F.3d 601, 608–09 (6th

3

Cir. 1997) (instructing that district courts must screen a complaint filed by an indigent non-prisoner under § 1915(e)(2) "before process is served or the individual has had an opportunity to amend the complaint," given that "[t]he moment the complaint is filed, it is subject to review under § 1915(e)(2)"), *overruled on other grounds by, LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). "The complaint must be dismissed if it falls within the requirements of § 1915(e)(2) when filed." *McGore*, 114 F.3d at 609; *see Jenkins v. Young*, No. 2:23-cv-13188, 2024 U.S. Dist. LEXIS 117773, at *3 (E.D. Mich. July 3, 2024) (dismissing a case for failure to state a claim after screening the complaint under § 1915(e)(2)).

Federal Rule of Civil Procedure 8(a) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief" as well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2)–(3). Rule 8 is intended to give a defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

"[D]etailed factual allegations" are not required under Rule 8's pleading standard, but the standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (footnote and citations omitted). Stated differently, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"[A] *pro se* complaint is to be liberally construed and, 'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020) (citation and quotation omitted). This leniency, however, "is not boundless." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). *Pro se* status does not exempt litigants from meeting basic pleading requirements, nor does it obligate a court to formulate allegations that

have not been pleaded. *See Porter v. Genovese*, 676 F. App'x 428, 440 (6th Cir. 2017) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## III. Analysis

### A. Count I: Violation of the Fair Credit Reporting Act (FCRA)

Plaintiff's FCRA claim in Count I is dismissed for failure to state a claim upon which relief can be granted.

Plaintiff alleges that she is "a consumer" within the meaning of the FCRA.[1] She asserts that Defendants violated the FCRA by: (1) "creating . . . an unauthorized account without Plaintiff's consent;" (2) "fail[ing] to properly investigate Plaintiff's dispute;" and (3) "continu[ing] to provide inaccurate information to consumer reporting agencies and send emails and mail of the debt." (ECF No. 1, PageID.2, ¶¶ 16–17.)

Because Plaintiff alleges that Defendants provided information to consumer reporting agencies (*id.* at ¶ 17), the Court treats Defendants as "furnishers" of information under the FCRA for screening purposes.[2] *See*

---

[1] The FCRA defines "consumer" as "an individual." 15 U.S.C. § 1681a(c).

[2] The FCRA does not define "furnisher," but the statute's implementing regulations define "furnisher" as "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 12 C.F.R. § 1022.41(c). The FCRA defines a "consumer reporting agency" as "any person which . . . regularly engages . . . in the practice of assembling or

*Briggs*, 801 F. App'x at 959 (a *pro se* complaint is to be liberally construed (citation omitted)).

### i. Creating an Unauthorized Account (First Allegation)

Plaintiff's first allegation that Defendants created an unauthorized account without her consent fails to state a claim under the FCRA.

In Count I's heading, Plaintiff cites generally to 15 U.S.C. § 1681, which is titled "Congressional findings and statement of purpose." This provision does not create a cause of action or impose liability on furnishers for opening accounts without authorization. The Court is unaware of any FCRA provision that imposes liability for the mere act of creating an unauthorized account.

In general, Congress' purpose in enacting the Act was:

> . . . to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

---

evaluating consumer credit information . . . for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f).

7

15 U.S.C. § 1681(b). Specifically, the Act regulates the conduct of "furnishers of information" and imposes duties related to the accuracy of the information they provide to consumer reporting agencies. 15 U.S.C. § 1681s-2. When a financial institution opens an account—whether authorized or unauthorized—it is not acting as a "furnisher of information" within the meaning of the FCRA because it has not yet furnished any "information" to a consumer reporting agency for inclusion in a consumer report. 12 C.F.R. § 1022.41(c). The account creation itself falls outside the FCRA's regulatory scope. Thus, this allegation in the complaint fails to state a claim against Defendants because they were not acting as a "furnisher of information" under the FCRA in opening the new account.[3] *See Merritt v. Lexis Nexis*, No. 12-12903, 2012 U.S. Dist. LEXIS 182100, at 13–14 (E.D. Mich. Dec. 27, 2012) (holding that LexisNexis was not acting as a "furnisher of information" under the FCRA because it did not transmit information concerning any debt owed, and therefore the plaintiff failed to state an FCRA claim).

---

[3] Plaintiff alleges that Defendants created an unauthorized account and then reported it to consumer reporting agencies, the reporting of a fraudulent account could constitute the furnishing of inaccurate information. However, as discussed below, even allegations concerning the reporting of inaccurate information fail to state a claim under the FCRA because enforcement of that duty is reserved to government agencies.

### ii. Failure to Investigate Dispute (Second Allegation)

Plaintiff's second allegation that Defendants failed to properly investigate her dispute fails to state a claim under the FCRA because Plaintiff has not alleged that a consumer reporting agency notified Defendants of her dispute.

"The FCRA 'creates a private right of action' for consumers to enforce the requirement under § 1681s-2(b) that furnishers of information investigate upon receiving notice of a dispute."[4] *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 517 (6th Cir. 2019). However, a private cause of action against a furnisher of information does not arise until a consumer reporting agency provides the furnisher with proper notice of a dispute. *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 615-16 (6th Cir. 2012). A consumer's direct dispute to a furnisher of information does not trigger the furnisher's duty to investigate under § 1681s-2(b). *See Brown v. Wal-Mart Stores, Inc.*, 507 F. App'x 543, 547 (6th Cir. 2012) (citing

---

[4] While 12 C.F.R. § 1022.43(a)-(f) mandates that a furnisher must conduct an investigation upon receipt of a direct dispute, the Sixth Circuit has consistently held that a private right of action for a violation of the Fair Credit Reporting Act under 15 U.S.C. § 1681s-2(b) does not exist against a furnisher unless a plaintiff pleads that a consumer reporting agency first notified the furnisher of a dispute over credit information. In any event, Plaintiff does not allege that 12 C.F.R. § 1022.43 grants her the right to sue furnishers directly, nor has pointed to any case law that supports such an argument.

*Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002)).

"In order to state a claim under the duty set out in 1681s-2(b) to undertake an investigation, [the plaintiff] 'must show that the furnisher received notice from a consumer reporting agency, not the plaintiff, that the credit information is disputed.'" *Collins v. Admin. Office of the Ky. Courts*, No. 12-350-KSF, 2013 U.S. Dist. LEXIS 133336, at *5 (E.D. Ky. Sep. 18, 2013) (quoting *Downs v. Clayton Homes, Inc.*, 88 F. App'x 851, 853 (6th Cir. 2004)) (dismissing FCRA claim where plaintiff failed to allege that a consumer reporting agency notified the furnisher of a dispute, a necessary element to trigger the duty to investigate under § 1681s-2(b)).

Notably, in *Lawson v. Mich. First Credit Union*, the complaint survived dismissal because the plaintiff alleged that she submitted a dispute to Equifax, a consumer reporting agency; that she asked Equifax to correct the inaccurate information; that Equifax forwarded her dispute to defendant Michigan First, the furnisher; and that Michigan First received the dispute but failed to properly investigate. No. 20-cv-10460, 2020 U.S. Dist. LEXIS 78600, at *24 (E.D. Mich. May 5, 2020). Likewise,

10

in *Begres v. Experian Info. Sols., Inc.*, the plaintiff alleged that he filed disputes with the consumer reporting agencies—Experian, Equifax, and TransUnion; that the agencies forwarded his disputes to defendant Honda, the furnisher; and that Honda negligently or willfully failed to conduct a reasonable investigation or review all relevant information. No. 19-11649, 2020 U.S. Dist. LEXIS 16882, at *6 (E.D. Mich. Feb. 3, 2020).

Here, Plaintiff's complaint contains no allegation that she disputed the account information with Equifax, Experian, TransUnion, or any other consumer reporting agency. Plaintiff alleges that she filed an "identity theft and fraud claim with the Consumer Financial Protection Bureau (CFPB)." (ECF No. 1, PageID.2, ¶ 13.) However, the CFPB is not a consumer reporting agency within the meaning of the FCRA. The CFPB is "an agency established within the Federal Reserve System to regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws." *Theodore Just v. Ally Fin., Inc.*, No. 24-11936, 2025 U.S. Dist. LEXIS 48051, at *10 (E.D. Mich. Feb. 13, 2025) (citing *Harris v. Pa. Higher Educ. Assistance Agency*, 696 F.

App'x 87, 91 (3d Cir. 2017)). A complaint to the CFPB does not trigger a furnisher's duty to investigate under § 1681s-2(b).

Without an allegation that Plaintiff notified a consumer reporting agency of her dispute, Defendants' duty to investigate under § 1681s-2(b) was never triggered. *See Scott*, 936 F.3d at 517–18. As a result, Plaintiff fails to state a claim for failure to investigate under the FCRA. *See Williams v. Navy Fed. Credit Union*, No. 23-11593, 2023 U.S. Dist. LEXIS 213251, at *12-13 (E.D. Mich. Nov. 30, 2023) (dismissing FCRA claim where complaint did not allege plaintiff disputed the reporting with a credit reporting agency or that furnisher received notice of such dispute); *Grier v. Simmons & Clark Jewelers*, No. 11-13946, 2011 U.S. Dist. LEXIS 154754, at *6 (E.D. Mich. Sep. 22, 2011) (dismissing FCRA claim where plaintiff failed to allege that a consumer reporting agency notified the furnisher of a dispute).

### iii. Providing Inaccurate Information to Consumer Reporting Agencies (Third Allegation)

Plaintiff's allegation that Defendants failed to provide accurate information to consumer reporting agencies also fails to state a claim

under the FCRA because there is no private right of action to enforce the duty to provide accurate information.

The FCRA imposes on furnishers the duty to provide accurate information to consumer reporting agencies. 15 U.S.C. § 1681s-2(a); *Scott*, 936 F.3d at 517. However, Congress expressly reserved enforcement of § 1681s-2(a) to governmental agencies and officials. 15 U.S.C. § 1681s-2(d) ("[§ 1681s-2(a)] shall be enforced exclusively . . . by the Federal agencies and officials and the State officials identified in that section."). Therefore, Plaintiff "may not sue Defendants for allegedly furnishing inaccurate information" under § 1681s-2(a) because

> [t]here exists no private cause of action for consumers against furnishers of information for failure to comply with § 1681s-2(a). *See Sanders v. Mountain America Fed. Credit Union*, 689 F.3d 1138, 1147 (10th Cir. 2012); *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011); *Nelson v. Chase Manhatten Mortg. Corp.*, 282 F.3d 1057, 1059–60 (9th Cir. 2002); *Elsady v. Rapid Global Business Solutions, Inc.*, No. 09–11659, 2010 WL 2740154, at *5 (E.D. Mich. Jul. 12, 2010); *Ruggiero*, 411 F. Supp. 2d at 736; *Carney*, 57 F. Supp. 2d at 502. Enforcement of the duty to provide accurate information is expressly limited by the statute to specific federal agencies and officials. 15 U.S.C. § 1681s-2(d).

*LaBreck v. Mid-Michigan Credit Bureau*, No. 1:16-cv-1160, 2016 U.S. Dist. LEXIS 163381, at *4 (W.D. Mich. Nov. 28, 2016); *see Boggio*, 696

F.3d at 615 ("[Section] 1681s-2(c) expressly precludes consumers from enforcing the requirement that furnishers, under § 1681s-2(a), initially provide complete and accurate consumer information to a [consumer reporting agency]."). "There can be no doubt that the duties imposed by 15 U.S.C. § 1681s-2(a) can only be enforced by government agencies and officials." *Yaldu v. Bank of Am. Corp.*, 700 F. Supp. 2d 832, 842 (E.D. Mich. 2010).

Plaintiff alleges that Defendants "continued to provide inaccurate information to consumer reporting agencies and send emails and mail of the debt," including the "reporting" of the unauthorized account. (ECF No. 1, PageID.2, ¶¶ 16–17.) Even if Plaintiff could establish that Defendants reported inaccurate information, she lacks standing to pursue this claim under the FCRA. Only federal or state government agencies can enforce § 1681s-2(a). Accordingly, Plaintiff's third allegation fails to state a claim. *See Rajapakse v. Credit Acceptance Corp*, No. 17-12970, 2019 U.S. Dist. LEXIS 18490, at *6 (E.D. Mich. Jan. 30, 2019) (holding that a consumer cannot sue defendants for allegedly furnishing inaccurate information under § 1681s-2(a)), *report and recommendation adopted sub nom. Rajapakse v. Credit Acceptance Corp.*, No. 17-CV-

12970, 2019 WL 948767 (E.D. Mich. Feb. 27, 2019), *aff'd sub nom.*
*Rajapakse v. Credit Acceptance Corporation, et al.*, No. 19-1192, 2021 WL
3059755 (6th Cir. Mar. 5, 2021).

### B. Count II: Violation of the Equal Credit Opportunity Act (ECOA)

Plaintiff's claim under the ECOA in Count II survives dismissal.
The complaint sufficiently states a claim under the ECOA for failure to
provide an adverse action notice explaining the basis for new account
creation.

"The term 'applicant' means any person who applies to a creditor
directly for an extension, renewal, or continuation of credit, or applies to
a creditor indirectly by use of an existing credit plan for an amount
exceeding a previously established credit limit." 15 U.S.C. § 1691a(b).
Plaintiff alleges in the complaint that she "applied for and was approved
for a Care Credit account" (ECF No. 1, PageID.1, ¶ 6.) Because Plaintiff
states that she applied and was approved for a "Care Credit account,"
and that a new account was issued, the Court treats Plaintiff as an
"applicant" under the ECOA for screening purposes. *Briggs*, 801 F. App'x
at 959 ("[A] *pro se* complaint is to be liberally construed.").

She also states that on March 1, 2023, she received an email "referencing a new account number . . . and stating that a lost/stolen card replacement was being issued." (ECF No. 1, PageID.1, ¶ 8.) She also indicates that she "immediately contacted Defendants to dispute the unauthorized account," to which Defendants falsely stated that the previous account had an outstanding balance and they were transferring that balance to the new account. (*Id.* at PageID.2, ¶ 10–11.) She alleges that she "requested the documentation, including the application or authorization used to create the new account, which Defendants refused to provide." (*Id.* at 12.)

The ECOA prohibits creditors from discriminating against a credit applicant in a credit transaction: "(1) on the basis of race, color, religion, national origin, sex or marital status, or age . . . ; (2) because all or part of the applicant's income derives from any public assistance program; or (3) because the applicant has in good faith exercised any right under the Consumer Credit Protection Act." 15 U.S.C. § 1691(a)(1)–(2). "The statute was amended in 1976 to require creditors to furnish written notice of the specific reasons why an adverse action was taken against a consumer." *Williams v. MBNA Am. Bank, N.A.*, 538 F. Supp. 2d 1015, 1018 (E.D.

Mich. 2008) (citing *Fischl v. Gen. Motors Acceptance Corp.*, 708 F.2d 143, 146 (5th Cir. 1983)). When a creditor takes adverse action against an applicant, the applicant has the right to receive a statement of the specific reasons behind that decision. 15 U.S.C. § 1691(d)(2); 12 C.F.R. § 202.9(b)(2). "[T]he term 'adverse action' means a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). A creditor who fails to comply with the ECOA adverse-notice requirement is liable to the aggrieved applicant for any actual damages they suffered, punitive damages, and attorneys' fees. *See* 15 U.S.C. § 1691e(a). The ECOA's adverse-action notice provisions apply to all applicants, not only those who allege discrimination. *See Williams*, 538 F. Supp. 2d at 1019 (citing *Jochum v. Pico Credit Corp. of Westbank*, 730 F.2d 1041, 1043 n.3 (5th Cir. 1984) (finding that plaintiffs did not need to state a claim of discrimination to assert a cognizable claim under § 1691(d)); *Edgerton v. Nationstar Mortg.*, LLC, No. 18-12020, 2018 U.S. Dist. LEXIS 222146, at *15 (E.D. Mich. Dec. 31, 2018). Independent of any discrimination allegations, a creditor's failure to provide a written adverse-action notice is actionable

under the ECOA. *See Williams*, 538 F. Supp. 2d at 1019 (citing *Costa v. Mauro Chevrolet, Inc.*, 390 F.Supp.2d 720, 728 (N.D. Ill. 2005) ("Without regard to allegations of discrimination, a creditor's failure to provide a written rejection notice is actionable under the ECOA.") (citations omitted)).[5]

Plaintiff alleges that Defendants violated the ECOA by "fail[ing] to provide an adverse action notice explaining the basis for the fraudulent account creation." (ECF No. 1, PageID.2, ¶ 18.) In this case, Plaintiff does not allege that she was denied credit; to the contrary, she alleges that Defendants opened a new account. Construing the complaint liberally, and for purposes of screening the complaint under § 1915(e)(2), the Court finds that Plaintiff alleges an "adverse action" by claiming that Defendants opened a new unauthorized account. Given that Plaintiff states that she previously had an account with Defendants, the opening of the new account could be construed as a "change in the terms of an existing credit arrangement" between the parties. 15 U.S.C. § 1691(d)(6). This adverse action may trigger the ECOA's notice requirements. As a

---

[5] The Sixth Circuit has yet to speak on whether ECOA plaintiffs suing under the adverse-action notice requirement have to allege discrimination to state a claim.

result, the complaint sufficiently states a claim under the ECOA in Count II. The ECOA claim is therefore not dismissed under § 1915(e)(2)(B) and may proceed. *See Edgerton v. Nationstar Mortg.*, LLC, No. 18-12020, 2018 U.S. Dist. LEXIS 222146, at *15 (E.D. Mich. Dec. 31, 2018) (holding that plaintiff stated an ECOA claim where she alleged the creditor failed to provide a written statement of reasons as required by § 1691(d)(2)).

### C. Count III: Violation of the Consumer Financial Protection Act (CFPA)

In Count III, Plaintiff alleges a violation of the CFPA. She alleges that "Defendants engaged in unfair, deceptive, or abusive acts by creating and falsely maintaining an unauthorized credit account in [her] name." (ECF No. 1, PageID.2, ¶ 19.) Under the CFPA, only the Bureau of Consumer Financial Protection may bring a civil action to enforce federal consumer financial law. 12 U.S.C. § 5564(a). The Act does not create a private right of action. *See Schooley v. Option One Mortg. Corp.*, No. 23-12341, 2024 U.S. App. LEXIS 17552, at *3 (11th Cir. July 17, 2024). Plaintiff's CFPA claim in Count III is therefore dismissed. *See Goss v. Citimortgage, Inc.*, No. 23-13306, 2025 U.S. Dist. LEXIS 6557, at *6 (E.D. Mich. Jan. 13, 2025) (dismissing CFPA claim because the statute does not provide a private right of action).

19

### D. Count IV: Violation of the Truth in Lending Act (TILA)

Plaintiff's TILA claim in Count IV is dismissed for failure to state a claim upon which relief can be granted. Even accepting Plaintiff's allegation that Defendants failed to provide required TILA disclosures, the claim is time-barred under TILA's one-year statute of limitations.

"TILA requires that creditors make certain disclosures as to the terms of lending arrangements and provides for civil liability for failure to comply with its provisions." *Coyer v. HSBC Mortg. Servs.*, 701 F.3d 1104, 1109 (6th Cir. 2012) (quoting *United States v. Petroff-Kline*, 557 F.3d 285, 294 (6th Cir. 2009)). The Act requires creditors to make certain disclosures "before the credit is extended." 15 U.S.C. § 1638(b)(1). The Act defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(f). Assuming Plaintiff became obligated on the account when it was created—despite her allegations that it was unauthorized—Defendants were required to provide disclosures at that time. The alleged failure to provide those disclosures constituted a violation when the account was opened.

"[A]ny claim under TILA is barred by the applicable one-year statute of limitations." *Coyer*, 701 F.3d at 1109 (citing *MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 734 n.3 (6th Cir. 2007); 15 U.S.C. § 1640(e). The statute provides that an action for violation of TILA "may be brought . . . within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The statute of limitations therefore begins to run when a creditor fails to provide the mandatory disclosures before extending credit.

Plaintiff alleges that Defendants "violat[ed] TILA's requirement for transparent credit terms" because Defendants "failed to provide Plaintiff with the required disclosures for the new account." (ECF No. 1, PageID.2, ¶ 20.) Plaintiff's allegations establish that Defendants created the new account before March 1, 2023. According to the complaint, Plaintiff received an email on March 1, 2023, "referencing a new account number" and stating that a replacement card was being issued. (Id. at PageID.1, ¶ 8.) The email therefore described an account that already existed as of March 1, 2023. Plaintiff further alleges that when she contacted Defendants immediately after receiving the email, Defendants told her they had "unilaterally created a new account . . . transferring the prior

balance." (Id. at PageID.2, ¶ 11.) This confirms that Defendants created the new account before Plaintiff received the March 1 email.

Under TILA, credit is extended when a debtor receives "the right . . . to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(f). Plaintiff alleges that Defendants created the new account with a transferred balance, thereby extending credit. Because Defendants created the new account and transferred balance on or before March 1, 2023, they extended credit on or before that date. Their obligation to provide TILA disclosures arose at that time, and their failure to do so constituted a completed violation on or before March 1, 2023. The "occurrence of the violation" under § 1640(e) therefore took place on or before March 1, 2023, and the one-year limitations period began running at that time and expired on or about March 1, 2024. Plaintiff filed this complaint on April 3, 2025, more than two years after the alleged violation and more than one year after the statute of limitations expired. The TILA claim is time-barred on its face.

A district court may dismiss a complaint *sua sponte* when a statute of limitations defect is apparent on the face of the complaint. *See Alston v. Tenn. Dep't of Corr.*, 28 F. App'x 475, 476 (6th Cir. 2002) (citing

*Merriweather v. City of Memphis*, 107 F.3d 396, 398 (6th Cir. 1997); *Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir. 1995)) "A federal court has the discretion to raise the statute of limitations issue *sua sponte* when screening a complaint under . . . § 1915(e)(2)(B) . . . and dismiss any claims barred by the applicable statute of limitations." *Luft v. Midland Cnty.*, No. 2:20-cv-12827, 2020 U.S. Dist. LEXIS 205680, at *3 (E.D. Mich. Nov. 4, 2020) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)). "Dismissal of a TILA claim is warranted when it appears on the face of the complaint to be time-barred." *Webb v. Guaranteed Rate Inc.*, No. 1:25-cv-00652, 2025 U.S. Dist. LEXIS 188246, at *18 (S.D. Ohio Sep. 24, 2025) (quoting *Smith v. Liberty Mortg. Company, Inc.*, No. 2:19-cv-3547-MHW, 2020 U.S. Dist. LEXIS 84714, at *4.); *see Bowman v. Fister*, No. 16-6642, 2017 U.S. App. LEXIS 27673, at *5 (6th Cir. Mar. 22, 2017) (affirming the dismissal of a *pro se* complaint under 28 U.S.C. § 1915(e)(2) because it appeared on the face of the complaint that it was time-barred) (citations omitted).

Furthermore, Plaintiff has failed to plead facts sufficient to support equitable tolling under the fraudulent concealment doctrine. Equitable tolling for TILA claims is available where a defendant has engaged in

fraudulent concealment. *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1043 (6th Cir. 1984). "Three elements must be pleaded in order to establish fraudulent concealment: (1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975).

To establish fraudulent concealment, Plaintiff must allege with particularity under Fed. R. Civ. P. 9(b) that Defendants engaged in conduct "above and beyond the wrongdoing upon which the plaintiff's claim is founded" to prevent her from suing in time. *Cheatom v. Quicken Loans*, 587 F. App'x 276, 281 (6th Cir. 2014). Plaintiff's allegation that Defendants "refused to provide the requested documentation" falls far short of establishing fraudulent concealment for several reasons:

First, Plaintiff had immediate knowledge of the underlying facts. She knew the account existed, knew she had not authorized it, and knew she had not received disclosures.

Second, Defendants' refusal to cooperate with Plaintiff's requests for documentation is not an affirmative act of concealment "above and beyond" the underlying TILA violation. The TILA violation itself was the failure to provide disclosures; refusing to provide documentation after the violation occurred does not somehow hide the violation that Plaintiff already knew about. *See Howard v. Bac Home Loans Servicing LP*, No. 1:12-CV-406, 2013 U.S. Dist. LEXIS 8753, at *11 (W.D. Mich. Jan. 23, 2013) (dismissing time-barred TILA claim where plaintiff failed to plead fraudulent concealment with particularity, alleging only conclusory misrepresentation without facts showing concealment or inability to discover the violation).

Third, Plaintiff has pleaded no facts explaining why she could not have filed suit within the one-year limitations period. The complaint contains no allegations that Defendants made affirmative misrepresentations, actively concealed information, or prevented Plaintiff from accessing legal assistance. Plaintiff does not allege that she lacked the information necessary to file suit during the limitations period—indeed, she alleges she "immediately" disputed the account, demonstrating immediate awareness of the problem.

Though liberally construed, the Court cannot "conjure up" facts to support Plaintiff's claim. *Wells*, 891 F.2d 591, 594 (6th Cir. 1989). Without allegations of affirmative concealment pleaded with the requisite particularity, equitable tolling is unavailable.

Therefore, the TILA claim is time-barred. *See Marshall v. Mortg. Elec. Registration Sys.*, No. 10-12344, 2010 WL 3790248, at *3 (E.D. Mich. Sept. 22, 2010) (dismissing plaintiff's TILA claim because plaintiff "filed th[e] action . . . over two years after the statute of limitations barred her claims," and she "failed to allege any facts to support equitable tolling").

### E. Count V: Violation of Identity Theft Laws (18 U.S.C. § 1028)

In Count V, Plaintiff alleges that Defendants violated "identity theft laws, 18 U.S.C. § 1028." (ECF No. 1, PageID.2–3, ¶¶ 21–22.) But "Plaintiff cannot bring a civil suit under [§ 1028] because [it is a] criminal law[ ] and do[es] not have a private right of action." *Watson v. Sikorcin*, No. 25-12869, 2025 U.S. Dist. LEXIS 470740, at *4 (E.D. Mich. Sept. 25, 2025) (citation omitted). Only the government may bring a criminal case in the absence of a private cause of action. *Leeke v. Timmerman*, 454 U.S. 83, 85–86 (1981) ("[A] private citizen lacks a judicially cognizable interest

in the prosecution or nonprosecution of another." (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973))). Thus, Plaintiff's § 1028 claim in Count V is dismissed.

IV.   **Conclusion**

For the reasons set forth above, Counts I, III, IV, and V are DISMISSED WITHOUT PREJUDICE under § 1915(e)(2)(B). Count II survives dismissal and proceeds.

IT IS SO ORDERED.

Dated: December 2, 2025          s/Judith E. Levy
Ann Arbor, Michigan              JUDITH E. LEVY
                                 United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 2, 2025.

                                 s/William Barkholz
                                 WILLIAM BARKHOLZ
                                 Case Manager